IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| PETER B. NOTTAGE, JR., and JENNIFER A. NOTTAGE, | CIVIL NO. 12-00418 JMS/BMK |
| Plaintiffs, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS COMPLAINT |
| vs. | |
| THE BANK OF NEW YORK MELLON, A NEW YORK CORPORATION, AS TRUSTEE FOR THE CERTIFICATEHOLDERS CWMBS, INC., CHL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-21; ET AL., | |
| Defendants. | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS COMPLAINT

## I. INTRODUCTION

On May 25, 2012, Plaintiffs Peter and Jennifer Nottage ("Plaintiffs") filed this action in the First Circuit Court of the State of Hawaii alleging state law claims against Defendants The Bank of New York Mellon, a New York Corporation, as Trustee for the Certificateholders CWMBS, Inc., CHL Mortgage Pass-through Certificates, Series 2006-21 ("BONY"); Countrywide Home Loans, Inc. ("CHL"); Bank of America, N.A. ("BANA"); and Mortgage Electronic

Registration Systems, Inc. ("MERS") (collectively "Defendants") stemming from a non-judicial foreclosure of Plaintiffs' home located at 76-863 North Pakalakala Place, Kailua-Kona, Hawaii 96740 (the "subject property").  On July 25, 2012, Defendants removed the action to this court.

Currently before the court is Defendants' Motion to Dismiss, in which they argue that the Complaint fails to state a claim upon which relief can be granted.  Based upon the following, the court GRANTS in part and DENIES in part Defendants' Motion to Dismiss, with leave for Plaintiffs to file a First Amended Complaint as to certain claims.

## II. <u>BACKGROUND</u>

### A.     **Factual Background**

As alleged in the Complaint, on September 15, 2005, Plaintiffs entered into a loan transaction with CHL for $1,437,000 secured by the subject property.  Doc. No. 1-2, Compl. ¶ 11; *id.* Ex. 2.  The mortgage describes that MERS "is a separate corporation that is acting solely as a nominee for [CHL] and [CHL's] successors and assigns.  MERS is the mortgagee under this Security Instrument."  *Id.* Ex. 2 at 2.[1]  At some time not known to Plaintiffs, BANA became

---

[1] The parties subsequently entered into a Modification Agreement to increase the loan amount to $1,731,257.  Doc. No. 1-2, Compl. Ex. 3.

the servicer of the loan.  *Id.* ¶ 13.

In 2008, Plaintiffs began experiencing severe economic hardship and were unable to pay their mortgage loan.  *Id.* ¶¶ 12, 14.  As a result, in January 2010, Plaintiffs sought a loan modification with BANA and complied with BANA's requests for documentation supporting economic hardship.  *Id.* ¶ 14.  The Complaint asserts that BANA provided conflicting information regarding the modification request -- in February 2010, BANA sent Plaintiffs a letter stating that it could not fulfill a modification request, but a few weeks later BANA sent Plaintiffs another letter stating that it was reviewing their modification request.  *Id.* ¶ 16.  The Complaint further asserts that during the modification process, "Plaintiffs relied upon representations made by [BANA] representatives that they were trying to help Plaintiffs keep their home and that no payments needed to be made in the meantime while [BANA] was processing their modification request."  *Id.* ¶ 17.  On April 5, 2010, Plaintiffs were notified that BANA rejected their modification request.  *Id.* ¶ 19.

In the meantime, on March 4, 2010, Plaintiffs received a Notice Under Fair Debt Collections letter from BONY, who was as far as Plaintiffs knew a stranger to the mortgage loan.  *Id.* ¶ 18.  With that said, however, on April 22, 2010 an Assignment of Mortgage was recorded in the State of Hawaii Bureau of

Conveyances assigning the mortgage from MERS, as nominee for CHL, to BONY. *Id.* ¶ 23; *id.* Ex. 7.  The Complaint asserts that the assignment to BONY is a "fraud" and/or nullity because (1) CHL did not exist at the time of the assignment to BONY, *id.* ¶ 25; (2) MERS had no authority to assign the mortgage note, *id.* ¶¶ 26-27; (3) BONY could not accept the mortgage loan where the trust closed on December 28, 2006, *id.* ¶¶ 31-35; and (4) the assignment was "robosigned" by Rhoena Rice as Vice President of MERS, as nominee for CHL, even though she has previously signed documents claiming authority from several other corporations.  *Id.* ¶¶ 36-38.

On April 22, 2010, Plaintiffs received a Notice of Mortgagee's Intent to Foreclose Under Power of Sale.  *Id.* ¶ 20; *id.* Ex. 4.  Over one year later, on April 26, 2011, BONY recorded with the State of Hawaii Bureau of Conveyances a Mortgagee's Affidavit of Foreclosure Under Power of Sale, stating that BONY had conducted a non-judicial foreclosure on the subject property on April 13, 2011. *Id.* ¶ 21; *id.* Ex. 5.  On July 6, 2011, a Limited Warranty Deed was recorded transferring the subject property from BONY to Lanikai Hui, LLC.  *Id.* ¶ 21; *id.* Ex. 6.

The Complaint asserts that the foreclosure was a nullity because BONY was not properly assigned the mortgage loan, failed to provide any

evidence demonstrating that it had possession of the Note, *id.* ¶¶ 29, 40, and "failed to conduct its alleged nonjudicial foreclosure in compliance with [Hawaii Revised Statutes ("HRS")] §] 667-5. *Id.* ¶ 41.

## B.    Procedural Background

On May 25, 2012, Plaintiffs filed their Complaint alleging seven state law claims titled (1) wrongful foreclosure; (2) breach of contract and implied covenant of good faith and fair dealing; (3) UDAP [unfair and deceptive trade practices]; (4) fraud; (5) negligent misrepresentation; (6) intentional and negligent infliction of emotional distress [IIED/NIED]; and (7) promissory estoppel.  On July 25, 2012, Defendants removed the action to this court.

On August 1, 2012, Defendants filed their Motion to Dismiss. Plaintiffs filed an Opposition on October 1, 2012, and Defendants filed a Reply on October 5, 2012.  A hearing was held on October 22, 2012.

## III.  STANDARDS OF REVIEW

## A.    Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

5

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  In other words, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  *Starr*, 652 F.3d at 1216.  Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader

is entitled to relief as required by Rule 8.  *Iqbal*, 556 U.S. at 679.

## B.    Rule 8

A complaint must also meet the requirements of Federal Rule of Civil

Procedure 8, mandating that a complaint include a "short and plain statement of the

claim," Fed. R. Civ. P. 8(a)(2), and that "each allegation must be simple, concise,

and direct."  Fed. R. Civ. P. 8(d)(1).  A complaint that is so confusing that its "true

substance, if any, is well disguised" may be dismissed *sua sponte* for failure to

satisfy Rule 8.  *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131 (9th

Cir. 2008) (quoting *Gillibeau v. City of Richmond*, 417 F.2d 426, 431 (9th Cir.

1969)); *see also McHenry v. Renne*, 84 F.3d 1172, 1180 (9th Cir. 1996)

("Something labeled a complaint but written . . ., prolix in evidentiary detail, yet

without simplicity, conciseness and clarity as to whom plaintiffs are suing for what

wrongs, fails to perform the essential functions of a complaint.").

Put differently, a district court may dismiss a complaint for failure to

comply with Rule 8 where the complaint fails to provide defendants with fair

notice of the wrongs they have allegedly committed.  *See McHenry*, 84 F.3d at

1178-80 (affirming dismissal of complaint where "one cannot determine from the

complaint who is being sued, for what relief, and on what theory, with enough

detail to guide discovery"); *cf. Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d

1097, 1105 n.4 (9th Cir. 2008) (finding dismissal under Rule 8 was in error where "the complaint provide[d] fair notice of the wrongs allegedly committed by defendants and [did] not qualify as overly verbose, confusing, or rambling").  Rule 8 requires more than "the-defendant-unlawfully-harmed-me accusation[s]" and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  *Iqbal*, 129 S. Ct. at 1949 (citations and quotations omitted).

## C.     Rule 9(b)

Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  "Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud."  *In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1547-48 (9th Cir. 1994) (en banc), *superseded on other grounds by* 15 U.S.C. § 78u-4.

In their pleadings, Plaintiffs must include the time, place, and nature of the alleged fraud; "mere conclusory allegations of fraud are insufficient" to satisfy this requirement.  *Id.* (citation and quotation signals omitted).  However, "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally."  Fed. R. Civ. P. 9(b); *see also In re GlenFed, Inc. Sec. Litig*, 42

8

F.3d at 1547 ("We conclude that plaintiffs may aver scienter . . . simply by saying that scienter existed."); *Walling v. Beverly Enter.*, 476 F.2d 393, 397 (9th Cir. 1973) (Rule 9(b) "only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." (citations omitted)).  A motion to dismiss for failure to plead with particularity is the functional equivalent of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

## IV.  DISCUSSION

Defendants argue that the Complaint fails to state a claim upon which relief can be granted.  The court addresses each Count of the Complaint in turn.

## A.    Wrongful Foreclosure (Count 1)

The Complaint asserts that BONY's foreclosure violated Hawaii's foreclosure statute, HRS § 667-5[2] because BONY was not "a proper mortgagee, successor assignee, or holder [of the Note]."  Doc. No. 1-2, Compl. ¶ 43.  The

---

[2]  As in effect at the time of the foreclosure, HRS § 667-5(a) provided:
> When a power of sale is contained in a mortgage, and where the mortgagee, the mortgagee's successor in interest, or any person authorized by the power to act in the premises, desires to foreclose under power of sale upon breach of a condition of the mortgage, the mortgagee, successor, or person shall be represented by an attorney who is licensed to practice law in the State and is physically located in the State.

Section § 667-5 was repealed effective June 28, 2012.  *See* Haw. Sess. Laws 2012, Ch. 182, § 50.

Complaint posits that BONY was not a proper mortgagee because (1) its assignment of the mortgage loan was fraudulent where CHL did not exist at the time of the assignment, *id.* ¶ 44; (2) it was not authorized to accept assets after the trust closed, *id.*; (3) the assignment was "robosigned" by Rhoena Rice as Vice President of MERS, as nominee for CHL, even though she has previously signed documents claiming authority from several other corporations, *id.* ¶¶ 36-38; (4) MERS had no authority to assign the mortgage note, *id.* ¶¶ 26-27; and (5) BONY failed to provide evidence that it possessed the promissory note. *Id.* ¶ 29. The court addresses each of these allegations.

### 1. *Existence of CHL at Time of Assignment*

As to Plaintiffs' allegation that CHL could not have assigned the mortgage loan where it longer existed at the time of the assignment to BONY, Defendants argue that this allegation is wholly conclusory and that CHL still exists. Contrary to Defendants' argument, the court finds that the Complaint's allegations are not too conclusory -- the Complaint asserts that at the time of the assignment, CHL no longer existed because it had been acquired by BANA. *See id.* ¶¶ 25-26. Although Plaintiffs could have certainly provided more details regarding BANA acquiring CHL, the court finds that the facts alleged, liberally construed, are sufficient. Further, Defendants offer no support for their assertion

10

that "CHL is a viable and separate legal entity from BANA that still exists."  Doc. No. 5-1, Defs.' Mot. at 10.  Although such fact could possibly be established on a Motion for Summary Judgment, it is not a proper inquiry for the court on a Rule 12(b)(6) Motion to Dismiss.

The court therefore DENIES Defendants' Motion to Dismiss Count I to the extent Plaintiffs base their wrongful foreclosure claim on the assertion that BONY could not have been assigned the mortgage where CHL did not exist at the time of assignment.

### 2.    *Violation of the Trust*

Plaintiffs' allegation that BONY was not authorized to accept assets after the trust closed attacks the Pooling and Service Agreement ("PSA") under which the mortgage loan was securitized.  This claims fails -- as this court has explained in several previous actions, Plaintiffs cannot challenge what occurred regarding the PSA because (1) Plaintiffs are third parties and lack standing to raise a violation of the PSA, and (2) noncompliance with the terms of a PSA is irrelevant to the validity of an assignment.  *See, e.g.*, *Benoist v. U.S. Bank Nat'l Ass'n*, 2012 WL 3202180, at *5 (D. Haw. Aug. 3, 2012); *Abubo v. Bank of New York Mellon*, 2011 WL 6011787, at *8 (D. Haw. Nov. 30, 2011).

This court came to this conclusion based on numerous cases

addressing the very claim Plaintiffs now put forward.  For example, *Anderson v. Countrywide Home Loans*, 2011 WL 1627945 (D. Minn. Apr. 8, 2011), addressed the allegations that an assignment to a securitization trust was invalid because the PSA provided that the trust ceased accepting mortgages several years before the contested assignment from MERS.  *Id.* at \*4.  *Anderson* concluded that "compliance with the chain of assignment mandated by a PSA was not relevant to the validity of the assignee's interest."  *Id.* (citing *Peterson-Price v. U.S. Bank Nat'l Ass'n*, 2010 WL 1782188, at \*10 (D. Minn. May 4, 2010)).  It reasoned in part that there was "no authority that an assignment made in contravention of a PSA is invalid."  *Id*.  It also concluded that plaintiffs did not have standing to challenge the validity of the assignment because they were not parties to the PSA. *Id.*

Many other recent and persuasive decisions follow similar logic.  *See Greene v. Home Loan Serv., Inc*., 2010 WL 3749243, at \*4 (D. Minn. Sept. 21, 2010) ("[P]laintiffs are not a party to the [PSA] and therefore have no standing to challenge any purported breach of the rights and obligations of that agreement.");  *Long v. One West Bank*, 2011 WL 3796887, at \*4 (N.D. Ill. Aug. 24, 2011) (rejecting argument that assignment executed after trust was closed in violation of the PSA rendered transaction invalid, reasoning that non-parties to the PSA lacked

standing to challenge the assignment and "it is irrelevant to the validity of the assignment whether or not it complied with the PSA"); *Juarez v. U.S. Bank Nat'l Ass'n*, 2011 WL 5330465, at \*4 (D. Mass. Nov. 4, 2011) (reasoning that plaintiff "does not have a legally protected interest in the assignment of the mortgage to bring an action arising under the PSA"); *Correia v. Deutsche Bank Nat'l Trust Co.*, 452 B.R. 319, 324-25 (B.A.P. 1st Cir. 2011) (rejecting argument by debtors that mortgage assignment was invalid based upon non-compliance with PSA, as debtors were neither parties, nor third-party beneficiaries, of the PSA); *cf. Cooper v. Bank of New York Mellon*, 2011 WL 3705058, at \*17 (D. Haw. Aug. 23, 2011) (dismissing breach of contract count brought by delinquent mortgagors for breach of PSA, reasoning that mortgagors were not third-party beneficiaries of PSA and thus had no standing to enforce its terms).

The court has already adopted the reasoning of these cases, and Plaintiffs offer no argument refuting this reasoning.[3] The court therefore GRANTS Defendants' Motion to Dismiss Count I to the extent it asserts that BONY was not a proper mortgagee due to violations of the PSA. Because granting leave to amend

---

[3] Instead, Plaintiffs argue in wholly conclusory fashion that "Plaintiffs are not claiming to be third party beneficiaries who are trying to enforce the contract, they are simply citing this document to show that the underlying nonjudicial foreclosure was improper." Doc. No. 13, Pls.' Opp'n at 8-9. Regardless of how Plaintiffs attempt to cast their claim, it boils down to the basic assertion that noncompliance with the PSA prevented BONY from properly holding the mortgage loan.

this claim would be futile, this dismissal is without leave to amend.

### 3.    *Robosigning by MERS*

The Complaint asserts that BONY was not a proper mortgagee because the assignment was "robosigned" by Rhoena Rice as Vice President of MERS, as nominee for CHL, even though she has previously signed documents claiming authority from several other corporations.

This claim fails -- the Complaint fails to explain why Rice's apparent authority to sign documents on behalf of multiple companies establishes that she did not have authority in this instance, and fails to assert facts explaining how any "robosigning" caused Plaintiffs any harm or damages. *See Chua v. IB Prop. Holdings, LLC*, 2011 WL 3322884, at *2 (C.D. Cal. Aug. 1, 2011) ("[T]o the extent that Plaintiffs take issue with Lisa Markham's dual position, Plaintiffs have not identified a relevant legal authority prohibiting one individual from working for both CitiMortgage and MERS or from acting as an agent for both."). Further, it is unclear what claim Plaintiffs could possibly raise where MERS has not contested Rice's authority to act. The court therefore reiterates its holding from other cases that conclusory assertions of "robo-signing" fail to state a plausible claim. *See, e.g.*, *Abubo*, 2011 WL 6011787, at *7 (citing *Cooper*, 2011 WL 3705058, at *13 (rejecting identical argument that Durham was not authorized to execute an

assignment on behalf of MERS); *Singer v. BAC Home Loan Servicing, LP*, 2011 WL 2940733, at *2 (D. Ariz. July 21, 2011) (rejecting as unsupported an assertion that a "robosigner" unlawfully signed a substitution of trustee form)); *see also Nastrom v. New Century Mortg. Corp*., 2012 WL 2090145, at *6 (E.D. Cal. June 8, 2012) (dismissing claim where "Plaintiffs offer no factual allegations (or legal theory) indicating how the alleged robo-signing of documents which assigned the subject loans harmed Plaintiffs"); *Block v. BAC Home Loans Servicing LP*, 2012 WL 2031640, at *4 (E.D. Mich. June 6, 2012) ("Plaintiffs' vague and speculative assertions of what has been labeled as 'robo-signing' are insufficient to state a plausible claim of fraud or irregularity."); *Schultz v. BAC Home Loans Servicing, LP*, 2011 WL 3684481, at *2 (D. Ariz. Aug. 23, 2011) ("[A]lthough Plaintiff asserts that various 'robosigners' were involved with signing documents pertaining to her mortgage, she has provided no facts supporting this claim or why she is accordingly entitled to relief for breach of contract.").

The court therefore GRANTS Defendants' Motion to Dismiss Count I to the extent based on allegations of "robosigning."  Because granting leave to amend this claim would be futile, this dismissal is without leave to amend.

### 4.    *MERS' Authority to Assign the Mortgage Note*

The Complaint's assertion that the foreclosure was wrongful because

15

MERS had no authority to assign the mortgage note also fails.  The court recently rejected this same argument in *Pascual v. Aurora Loan Services, LLC*, 2012 WL 2355531, at *4 (D. Haw. June 19, 2012) ("*Pascual I*"), and its reasoning applies equally here.

      *Pascual I* explains that *Cervantes v. Countrywide Home Loans*, 656 F.3d 1034 (9th Cir. 2011), held that claims attacking the MERS recording system as a fraud fail, given that mortgages generally disclose MERS's role as acting "solely as nominee for Lender and Lender's successors and assigns," and that MERS has the right to foreclose and sell the property.  *See Cervantes*, 656 F.3d at 1042.  And just like in *Cervantes* (and *Pascual I*), the mortgage in this action expressly notifies Plaintiffs of MERS's role as the nominee for the "Lender and Lender's successors and assigns."  *See* Doc. No. 1-2, Compl. Exs. at page 53-55 of 124.  Thus, to the extent CHL still existed at the time of the assignment, MERS exercised the authority granted to it by CHL by assigning the mortgage to BONY. *Id.* at 123 of 124.

      Thus, in light of the express disclosures in the mortgage giving MERS the authority act on behalf of CHL and the transfer of the mortgage to BONY, Plaintiffs have no basis to assert that CHL did not authorize MERS to transfer the mortgage.  Indeed, this court has already rejected numerous borrowers' claims

challenging MERS's authority to assign, on behalf of a lender, the mortgage. *See, e.g.*, *Fed. Nat'l Mortg. Ass'n v. Kamakau*, 2012 WL 622169, at *4 & *5 n.5 (D. Haw. Feb. 23, 2012) (explaining that a borrower cannot challenge an assignment that he was not a party to, and that plaintiff may not assert claims based on the argument that MERS lacked authority to assign its right to foreclose); *Lindsey v. Meridias Cap., Inc.*, 2012 WL 488282, at *3 n.6 (D. Haw. Feb. 14, 2012) ("'[A]ny argument that MERS lacked the authority to assign its right to foreclose and sell the property based on its status as 'nominee' cannot stand in light of [*Cervantes*.]" (quoting *Velasco v. Sec. Nat'l Mortg. Co.*, 2011 WL 4899935, at *11 (D. Haw. Oct. 14, 2011)); *Teaupa v. U.S. Nat'l Bank N.A.*, 836 F. Supp. 2d 1083, 1104 (D. Haw. 2011) (dismissing without leave to amend claim asserting that MERS lacks standing to foreclose); *Abubo*, 2011 WL 6011787, at *8  (dismissing claim challenging MERS's authority to assign the mortgage on the basis that "the involvement of MERS in the assignment cannot be a basis for voiding the assignment, much less for a claim of fraud").

The court therefore GRANTS Defendants' Motion to Dismiss Count I to the extent based on allegations that MERS lacked authority to assign the mortgage note.  Because granting leave to amend this claim would be futile, this dismissal is without leave to amend.

17

### 5.    *BONY's Failure to Provide Evidence That It Possessed the Note*

Finally, the Complaint asserts that BONY violated HRS § 667-5 by failing to provide evidence that it possessed the promissory note.  Like many of Plaintiffs' other arguments, the court has already rejected this argument in *Pascual* (in which the plaintiffs were represented by the same counsel in this action) and its reasoning applies here.

Specifically, *Pascual v. Aurora Loan Servs., LLC*, 2012 WL 3583530 (D. Haw. Aug. 20, 2012) ("*Pascual II*"), rejected that HRS § 667-5 includes an affirmative requirement that the mortgagee produce the note -- the plain language of § 667-5 includes no such requirement, and reading such requirement into § 667-5 would be inconsistent with decisions in other jurisdictions that have refused to read a "show me the note" requirement into non-judicial foreclosure statutes that do not otherwise explicitly include such a requirement.  *See id.* at *3 (collecting cases).  As a result, *Pascual II* concluded that the Hawaii Supreme Court would reject that HRS § 667-5 includes a "show me the note" requirement.  *Id.* at *4.

In opposition, Plaintiffs raise the same arguments that the court already rejected in *Pascual II* -- that the court should follow *U.S. Bank National Ass'n v. Kimball*, 27 A.3d 1087 (Vt. 2011), and *In re Veal*, 450 B.R. 897 (B.A.P. 9th Cir. 2011).  But as *Pascual II* explains, these cases are no help to Plaintiffs --

18

both cases addressed a mortgagee's legal standing to foreclosure through a court process (as opposed to here where the mortgagee is defending against an action brought by the borrowers), and neither interpreted HRS § 667-5, much less even addressed a non-judicial foreclosure statute.  *Pascual II*, 2012 WL 3583530, at *5.  Indeed, *In re Veal* actually recognized that non-judicial foreclosure statutes may change the common law rule requiring a mortgagee to hold the underlying note, which appears to be exactly what the Hawaii legislature did in enacting § 667-5. *Id.*

The court therefore GRANTS Defendants' Motion to Dismiss Count I to the extent based on allegations that BONY failed to establish that it holds the note.  Because granting leave to amend this claim would be futile, this dismissal is without leave to amend.

## B.  Breach of Contract and Implied Covenant of Good Faith and Fair Dealing (Count II)

The Complaint asserts this claim "as an alternative theory of relief . . . assuming arguendo [that BONY] had legal or contractual authority to invoke the power of sale."  Doc. No. 1-2, Compl. ¶ 48.  The Complaint further asserts that BONY "had a duty of good faith and fair dealing with Plaintiffs, the mortgagors, as to all matters related to performance of the subject mortgage loan," Doc. No. 1-2, Compl. ¶ 48, and that BONY breached this covenant of good faith and fair dealing

by failing "to take commercially reasonable steps to verify its lawful ownership of the Note and Mortgage before declaring Plaintiffs in default" of the mortgage loan. *Id.* ¶ 51.

This claim is internally inconsistent -- on the one hand, the claim assumes that BONY had authority to invoke the power of sale in the mortgage loan, but then on the other hand asserts that BONY failed to verify its ownership and "was not the lawful holder" of the mortgage loan. Needless to say, Plaintiffs cannot have it both ways. To the extent this claim is premised on BONY having proper authority under the mortgage loan, whether it verified its ownership would be legally irrelevant. And to the extent BONY is not the proper mortgagee, then Plaintiffs fail to explain how BONY had a contractual duty of good faith and fair dealing with Plaintiffs. On these bases alone, the claim fails.

Further, to the extent Plaintiffs are attempting to assert a breach of contract claim, they fail to state a claim.[4] Plaintiffs fail to allege even the basic elements of a breach of contract claim, much less the factual allegations to support it. Completely missing from this Count is any mention of the particular provision of the mortgage loan that BONY violated, any assertion that Plaintiffs performed

---

[4] In their Opposition, Plaintiffs assert that their claim is one for breach of contract, as opposed to a claim for bad faith. Such concession comports with the fact that a claim for bad faith based upon a mortgage loan contract is not recognized in Hawaii. *See, e.g.*, *Teaupa v. U.S. Nat'l Bank N.A.*, 836 F. Supp. 2d 1083, 1093 (D. Haw. 2011).

under the mortgage loan, or an assertion of how Plaintiffs were injured. *See, e.g.*, *Velez v. The Bank of New York Mellon*, 2011 WL 572523, at \*3 (D. Haw. Feb. 15, 2011) (explaining that a breach of contract claim requires a plaintiff to identify (1) the contract at issue; (2) the parties to the contract; (3) whether Plaintiff performed under the contract; (4) the particular provision of the contract allegedly violated by the Defendant; (5) when and how the Defendant allegedly breached the contract; and (6) how Plaintiff was injured).

The court therefore GRANTS Defendants' Motion to Dismiss Count II, with leave for Plaintiffs to amend to assert a breach of contract claim.

## C.   UDAP (Count III)

The Complaint asserts that Defendants engaged in unfair and deceptive trade practices in violation of HRS § 480-2:

> with respect to mortgage loan servicing, Assignment of Mortgage, execution of the Limited Warranty Deed, wrongful foreclosure of Plaintiffs' home, and related matters by, among other things:
>
> (a)   Instituting wrongful nonjudicial foreclosure upon Plaintiffs' home without contractual authority to do so;
>
> (b)   Executing and recording false and misleading documents;
>
> (c)   Executing and recording documents without the legal authority to do so;
>
> (d)   Failing to disclose the principal for which documents were being executed and recorded;
>
> (e)   Failing to record Powers of Attorney in

21

connection with other recorded documents;
      (f)     Accepting the subject mortgage as trustee without the legal authority to do so; [and]
      (g)     Other deceptive business practices.

Doc. No. 1-2, Compl. ¶ 56. The Complaint further asserts that Defendants' violations "have caused substantial harm to Plaintiffs" and therefore entitle them "to an award of actual, threefold, and punitive damages in an amount to be determined at trial." *Id.* ¶¶ 57, 59.

Defendants argue that this claim fails because Plaintiffs have failed to state a cognizable claim for wrongful foreclosure and they have otherwise failed to allege damages or that the action is in the public interest. *See* Doc. No. 5-1, Defs.' Mot. at 18-19; *see also Tokuhisa v. Cutter Mgmt. Co.*, 223 P.3d 246, 261 (Haw. App. 2009) ("Thus, § 480-13 establishes four essential elements: (1) a violation of chapter 480; (2) injury to plaintiff's business or property resulting from such violation; (3) proof of the amount of damages; and (4) a showing that the action is in the public interest or that the defendant is a merchant.") (citations omitted). As described above, however, Plaintiffs have asserted a cognizable wrongful foreclosure claim based on the assertion that CHL did not exist at the time of its assignment to BONY. And certainly, BONY's foreclosure of Plaintiffs' home -- if wrongful -- would cause damages to Plaintiffs (as alleged in the Complaint), and this action would be in the public interest.

To the extent this claim is based on facts independent of BONY's alleged wrongful foreclosure, however, these claims are so vague and conclusory that they fail to state a plausible UDAP claim.  The Complaint fails to explain (1) who executed and recorded what documents, and why they did not have legal authority; (2) who failed to disclose which principal regarding what particular documents; and (3) who failed to record Powers of Attorney as to what recorded documents.  And further missing from these allegations is any explanation as to (1) against whom each of these UDAP violations is alleged against; and (2) precisely how these allegations caused injury to Plaintiffs.  Without any factual allegations explaining these vague assertions, Plaintiffs have failed to state plausible claim for relief on any of these bases.

Finally, to the extent this claim is based on BANA's loan servicing of the mortgage loan, the Complaint fails to assert sufficient facts establishing any unfair or deceptive practices.  The Complaint asserts that during the loan modification process, "Plaintiffs relied upon representations made by [BANA] representatives that they were trying to help Plaintiffs keep their home and that no payments needed to be made in the meantime while [BANA] was processing their modification request."  Doc. No. 1-2, Compl. ¶ 17.  To the extent these statements formed any promise, such promise apparently terminated on April 5, 2010 when

23

Plaintiffs were notified that BANA rejected their modification request. *Id.* ¶ 19.  It was only after BANA rejected the modification request, on April 22, 2010, that BONY sought to foreclose on the subject property. *Id.* ¶ 20.  And it was not until one year later that BONY did in fact foreclose.  Without more explanation, these allegations simply do not establish a UDAP violation.

The court therefore GRANTS in part and DENIES in part Defendants' Motion to Dismiss Count III, with leave for Plaintiffs to amend.

## D.   Fraud (Count IV)

The Complaint asserts that "the critical title documents, the Assignment of the Mortgage, and the Limited Warranty Deed are products of fraud committed by robo-signers misrepresenting their authority and corporate capacity, and are therefore legally void."  Doc. No. 1-2, Compl. ¶ 62.  The Complaint further asserts that BONY's "false, fraudulent, and material representations that it was the lawful holder of the Note and Mortgage and had legal and contractual authority to conduct the nonjudicial foreclosure, caused the wrongful nonjudicial foreclosure of the subject property."  *Id.* ¶ 63.  Finally, the Complaint asserts that BONY "declared Plaintiffs to be in breach of the mortgage loan and proceeded with the nonjudicial foreclosure, knowing that it was not the proper mortgagee, successor assignee, or holder of the mortgage loan, but inducing Plaintiff to believe

otherwise." *Id.* ¶ 64.

It appears that Plaintiffs base this claim on their allegations of wrongful foreclosure by BONY, and as explained above, Plaintiffs have failed to state a cognizable claim for wrongful foreclosure except to the extent based on the allegation that CHL had been acquired by BANA at the time of the assignment to BONY. To the extent Plaintiffs could base a fraud claim based on the fact that CHL did not exist at the time of the assignment, however, the Complaint fails to "assert 'particularized allegations of the circumstances *constituting* fraud' . . . such as the time, place, and nature of the alleged actions." *Chun v. Accredited Home Lenders, Inc.*, 2011 WL 3273120, at *4 (D. Haw. July 29, 2011) (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d at 1547-48). Indeed, Plaintiffs' theory of fraud by BONY is completely undefined -- for example, do Plaintiffs assert that BONY knew that CHL could not assign the mortgage loan, and/or that BONY and CHL and/or BANA worked together to create this alleged false assignment? Without any particular allegations explaining BONY's allegedly fraudulent acts, this claim fails to state a plausible claim for fraud.

The court therefore GRANTS Defendants' Motion to Dismiss Count IV, with leave for Plaintiffs to amend.

**E.      Negligent Misrepresentation (Count V)**

The Complaint asserts that BONY "had a duty to exercise reasonable care and skill to follow Hawaii law with regard to foreclosures, to refrain from taking any action against Plaintiffs that it did not have legal authority to do, and to provide Plaintiffs with accurate information regarding the transfer and assignment of their Mortgage." Doc. No. 1-2, Compl. ¶ 69.  The Complaint further asserts that BONY breached this duty by, among other things, foreclosing on the subject property without legal authority, which caused Plaintiffs to suffer "general and specific damages in an amount to provide at trial." *Id*. ¶¶ 71-72.

These allegations are too vague and conclusory to state a plausible claim for negligent misrepresentation.  To assert such claim, Plaintiffs must allege facts establishing that: "'(1) false information [is] supplied as a result of the failure to exercise reasonable care or competence in communicating the information; (2) the person for whose benefit the information is supplied suffered the loss; and (3) the recipient relies upon the misrepresentation.'" *Zanakis-Pico v. Cutter Dodge, Inc.*, 98 Haw. 309, 321, 47 P.3d 1222, 1234 (2002) (quoting *Blair v. Ing*, 95 Haw. 247, 269, 21 P.3d 452, 474 (2001); Restatement (Second) of Torts § 552 (1977)). Although Plaintiffs have stated a plausible claim for wrongful foreclosure based on the allegation that CHL did not exist at the time of the assignment, the Complaint

fails to allege any facts establishing that Plaintiffs relied upon the purported false misrepresentation that BONY owned the mortgage loan.[5]

The court therefore GRANTS Defendants' Motion to Dismiss Count V of the Complaint with leave to amend.

## F.   IIED and NIED (Count VI)

The Complaint asserts that BONY should have known prior to commencing the nonjudicial foreclosure that it did not own the mortgage loan and that foreclosing "was likely to cause Plaintiffs severe emotional distress, mental anguish, insomnia, headaches, anxiety and depression."  Doc. No. 1-2, Compl. ¶¶ 74-75.  The Complaint further asserts that:

> As a proximate result of [BONY's] negligent acts and omissions, as well as [its] intentional and deliberate acts in proceeding with the unlawful foreclosure of the subject property all the while knowing the Assignment of Mortgage was (a) executed by known robo-signer without any legal authority or capacity to execute the same; and b) that Countrywide, the alleged assignor, did not even exist at the time the Assignment of Mortgage was executed, the Defendant Trustee did cause Plaintiffs to suffer Emotional Distress.

*Id.* ¶ 76.  Defendants argue that these allegations fail to assert a plausible NIED or

---

[5] Defendants further argue that this claim fails because a lender generally does not owe a borrower a duty of care.  *See* Doc. No. 5-1, Defs.' Mot. at 5-1 (citing *Caraang v. PNC Mortg.*, 795 F. Supp. 2d. 1098, 1122 (D. Haw. 2011)).  Defendants do not address, however, whether a lender owes a duty to a borrower where it seeks to foreclose on the property at issue.  The court need not address this issue, however, where the claim fails for other reasons.

IIED claim.  The court addresses each claim in turn.

### 1.    NIED

A plaintiff may recover for NIED "where a reasonable [person], normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case."  *Doe Parents No. 1 v. State*, 100 Haw. 34, 69, 58 P.3d 545, 580 (2002) (citations and quotations omitted).  An NIED claim "is nothing more than a negligence claim in which the alleged actual injury is wholly psychic and is analyzed utilizing ordinary negligence principles."  *Id*. (citations and quotations omitted).  To maintain an NIED claim, "an NIED claimant must establish, incident to his or her burden of proving actual injury (*i.e.*, the fourth element of a generic negligence claim), that someone was physically injured by the defendant's conduct, be it the plaintiff himself or herself or someone else."  *Id*.

Defendants argue that this claim fails because the Complaint fails to plead any facts showing that any Defendant engaged in negligent conduct, that Plaintiffs suffered emotional distress, or that any negligence conduct was the legal cause of Plaintiffs' emotional distress.  The court disagrees.  As described above, the Complaint asserts a cognizable claim for wrongful foreclosure, which means that BONY allegedly breached a duty to Plaintiffs not to foreclose on the subject

28

property where it had no valid claim.  The Complaint further asserts that BONY's wrongful foreclosure caused Jennifer Nottage to experience mental anguish, insomnia, headaches, anxiety and depression, and rendered her unable to conduct activities of daily living such as driving.  *See* Doc. No. 1-2, Compl. ¶¶ 75-77. These allegations are sufficient to establish an NIED claim.

The court therefore DENIES Defendants' Motion to Dismiss Plaintiffs' NIED claim.

### 2.    *IIED*

An IIED claim requires Plaintiffs to establish that: (1) the act that caused the harm was intentional or reckless; (2) the act was outrageous; and (3) the act caused extreme emotional distress to another.  *Young v. Allstate Ins. Co.*, 119 Haw. 403, 429, 198 P.3d 666, 692 (2008).  An IIED claim "requires conduct exceeding all bounds usually tolerated by decent society and which is of a nature especially calculated to cause, and does cause, mental distress of a very serious kind."  *Hac v. Univ. of Haw.*, 102 Haw. 92, 106, 73 P.3d 46, 60 (2003) (citing *Tibke v. McDougall*, 479 N.W.2d 898, 907 (S.D. 1992)).  An outrageous act is one such that upon reading the plaintiff's complaint "average members of our community might indeed exclaim, 'Outrageous.'"  *See Young*, 119 Haw. at 429-30, 198 P.3d at 692-93.

29

Defendants argue that this claim fails because Plaintiffs have failed to assert a plausible wrongful foreclosure claim and in any event, "[d]efault and foreclosure proceedings generally do not rise to the level of extreme and outrageous conduct." *See* Doc. No. 5-1, Defs.' Mot. at 23 (quoting *Uy v. Wells Fargo Bank, N.A.*, 2011 WL 1235590, at *14 (D. Haw. Mar. 28, 2011) (citing *Erickson v. Long Beach Mortg. Co.*, 2011 WL 830727, at *7 (W.D. Wash. Mar. 2, 2011) (citation omitted) (dismissing IIED claim on summary judgment)); *see also Enriquez v. Countrywide Home Loans, FSB*, 814 F. Supp. 2d 1042, 1070 (D. Haw. 2011) (applying *Uy*); *cf. Bass v. Ameriquest Mortg. Co.*, 2010 WL 3025167, at *10-11 (D. Haw. Aug. 3, 2010) (denying summary judgment as to an IIED claim where the plaintiff asserted that the defendant "forged her signature on the 2006 loans, refused to honor [her] right of cancellation of the loans when she discovered the forgeries, and commenced foreclosure proceedings against [her] when she failed to make her loan payments").

The court rejects this argument -- as explained above, Plaintiffs have asserted a cognizable wrongful foreclosure claim, and the cases relied upon by Defendants address the situation where the terms of the loan and/or loan modification procedures were challenged. *See Uy*, 2011 WL 1235590, at *14 ("The Court is unpersuaded by Plaintiff's suggestion that Wells Fargo's conduct

was extreme and outrageous because Plaintiff 'may not have been properly

qualified for the loan, not all terms of the loan were disclosed to him, his payments

could go up to $7800.00 per month, his request for a loan modification was denied,

etc.'").  A very different situation is presented here where Plaintiffs allege that

BONY foreclosed on the subject property without receiving a valid assignment.

And viewing the facts alleged in a light most favorable to Plaintiffs, such wrongful

foreclosure may be considered outrageous conduct.[6]

The court therefore DENIES Defendants' Motion to Dismiss

Plaintiffs' IIED claim.

## G.     Promissory Estoppel (Count VII)

The Complaint asserts that "in applying for the loan modification,

Plaintiffs relied upon representations, false promises, and assertions made by

[BANA] that it was willing to accommodate a loan modification to help Plaintiffs

keep their home and that no payments needed to be made in the meantime while

[BANA] was processing their modification request."  Doc. No. 1-2, Compl. ¶ 78.

The Complaint further asserts that despite these promises, on April 22, 2010

Plaintiffs received BONY's Notice of Intent to Foreclose.  *Id.* ¶ 79.

---

[6] Defendants further argue that the Complaint fails to allege causation and emotional distress.  As explained above for Plaintiffs' NIED claim, Plaintiffs have sufficiently alleged these elements.

Under Hawaii law, Plaintiffs must establish the following four

elements to state a claim for promissory estoppel:

> (1) There must be a promise;
> (2) The promisor must, at the time he or she made the promise, foresee that the promisee would rely upon the promise (foreseeability);
> (3) The promisee does in fact rely upon the promisor's promise; and
> (4) Enforcement of the promise is necessary to avoid injustice.

*White v. Pac. Media Grp.*, 322 F. Supp. 2d 1101, 1109 (D. Haw. 2004) (quoting *In*

*re Herrick*, 82 Haw. 329, 337-38, 922 P.2d 942, 950-51 (1996)).  In this context,

"[a] 'promise' is defined as 'a manifestation of intention to act or refrain from

acting in a specified way, so made as to justify a promisee in understanding that a

commitment has been made.'"  *In re Herrick*, 82 Haw. at 338, 922 P.2d at 951

(quoting Restatement (Second) of Contracts § 2(1) (1979)); *see also Matsumura v.*

*Bank of Am., N.A.*, 2012 WL 463933, at *5 (D. Haw. Feb. 10, 2012) (discussing

promissory estoppel claim brought in wrongful foreclosure action).

Defendants argue that the Complaint fails to establish the existence of

any promise that must be enforced to avoid injustice.  The court agrees -- the

Complaint does not assert that BANA actually promised that it would provide

Plaintiffs a modification; rather, it asserts only that it told Plaintiffs that they need

not make payments while BANA was reviewing the loan modification request.

According to the Complaint, this promise was not violated -- on April 5, 2010, BANA notified Plaintiffs that it had rejected the modification request, Doc. No. 1-2, Compl. ¶ 17, and it was not until April 22, 2010 that BONY notified Plaintiffs of its intent to foreclose and then one year later completed the foreclosure sale. *Id.* ¶¶ 20, 21.  Thus, any promise not to seek foreclosure during the loan modification process was terminated before BONY sought foreclosure.

The court therefore GRANTS Defendants' Motion to Dismiss Count VII with leave to amend.

## V.  <u>CONCLUSION</u>

Based on the above, the court GRANTS in part and DENIES in part Defendants' Motion to Dismiss.  Plaintiffs' claims against BONY for wrongful foreclosure, UDAP, NIED, and IIED remain, to the extent based on the assertion that CHL did not exist at the time it purported to assign the mortgage loan to BONY.  Plaintiffs are further granted leave to file a First Amended Complaint asserting claims for UDAP, fraud, negligent misrepresentation, and promissory estoppel consistent with this Order by November 12, 2012.  Plaintiffs are notified that a First Amended Complaint will supersede the Complaint.  *Ferdik v. Bonzelet*, 963 F.2d 1258 (9th Cir. 1992); *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990).  After amendment, the court will treat the

Complaint as nonexistent.  *Ferdik*, 963 F.2d at 1262.  If Plaintiffs fail to file a First

Amended Complaint, Plaintiffs' claims for wrongful foreclosure, UDAP, NIED,

and IIED will proceed against BONY.

        IT IS SO ORDERED.

        DATED:  Honolulu, Hawaii, October 25, 2012.



        /s/ J. Michael Seabright
        J. Michael Seabright
        United States District Judge

*Nottage v. The Bank of New York Mellon, a New York Corporation, as Trustee for the
Certificateholders CWMBS, Inc., CHL Mortgage Pass-through Certificates, Series 2006-21*, Civ.
No. 12-00418 JMS/BMK, Order Granting in Part and Denying in Part Defendants' Motion to
Dismiss Complaint